IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PATRICIA K. LANDRUM                                             PLAINTIFF

v.                                          Civil Action No. 1:12cv5-HSO-RHW

CONSECO LIFE INSURANCE COMPANY                        DEFENDANT

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING
DEFENDANT'S *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF G.
RICHARD THOMPSON; DENYING PLAINTIFF'S MOTION FOR
SANCTIONS AND TO STRIKE/OBJECTION TO AFFIDAVIT, EXPERT
OPINIONS, OTHER EXHIBITS, AND ARGUMENTS SUBMITTED IN
SUPPORT OF CONSECO'S MOTION FOR SUMMARY JUDGMENT; AND
DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE ADDITIONAL
PAGES OF MEMORANDUM BRIEFS IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

BEFORE THE COURT are five Motions: (1) Plaintiff Patricia K. Landrum's

Motion [100] for Partial Summary Judgment; (2) Defendant Conseco Life

Insurance Company's Motion [102] for Summary Judgment; (3) Conseco's *Daubert*

Motion [104] to Exclude Testimony of G. Richard Thompson; (4) Ms. Landrum's

Motion [107] for Sanctions and to Strike/Objection to Affidavit, Expert Opinions,

Other Exhibits, and Arguments Submitted in Support of Conseco's Motion for

Summary Judgment; and (5) Ms. Landrum's Motion [119] for Leave to File

Additional Pages of Memorandum Briefs in Support of her Motion [100][101] for

Partial Summary Judgment.  The Motions [100][102][104][107][119] have been

fully briefed.

After consideration of the pleadings, the record, and relevant legal

authorities, and for the reasons discussed below, the Court finds that Ms. Landrum's Motion [100] for Partial Summary Judgment and Conseco's Motion [102] for Summary Judgment should each be granted in part and denied in part, Conseco's *Daubert* Motion [104] should be granted, Ms. Landrum's Motion [107] for Sanctions and to Strike should be denied, and Ms. Landrum's Motion [119] for Leave to File Additional Pages should be denied.

Conseco correctly calculated the death benefit and interest owed to Ms. Landrum as the primary beneficiary of her ex-husband's life insurance policy. Conseco is entitled to summary judgment in part on these issues. However, Ms. Landrum is entitled to summary judgment in part in that Conseco did breach the terms of the life insurance policy by delaying payment. Ms. Landrum's claim for extra-contractual compensatory damages will proceed to trial. Ms. Landrum's claims for fraudulent misrepresentation, negligent misrepresentation, conversion, unjust enrichment, breach of the duty of good faith and fair dealing, and breach of fiduciary duty will be dismissed. Ms. Landrum's claim for punitive damages is not ripe, and Conseco's request to dismiss Ms. Landrum's punitive damages claim will be denied without prejudice at this time.

## I. **BACKGROUND**

Lamar Life Insurance Company issued a flexible premium adjustable life insurance policy ("the Policy) to John L. Landrum in 1993. Policy [100-1]. Mr. Landrum named his then-wife Plaintiff Patricia K. Landrum as the Policy's

primary beneficiary.  *Id.* at pp. 25-28.  Lamar Life Insurance Company merged into Conseco Life Insurance Company effective December 31, 1998, and Conseco assumed "all liability" for the Policy "as if it had been issued originally by Conseco Life Insurance Company."  Policy Endorsement [100-1]; Letter [100-14].  Ms. Landrum abandoned the Landrums' marriage in 1996.  In 1999, Mr. Landrum was granted a divorce from her on grounds of desertion.  Final Decree of Divorce [100-8]; Dep. of Patricia Landrum [102-13] at p. 3.  Despite the divorce, Ms. Landrum remained the primary beneficiary of the Policy.

On May 25, 2011, Mr. Landrum died from multiple gunshot wounds.  Death Certificate [100-6].  On May 27, 2011, Conseco became aware that Mr. Landrum may have died.  Def.'s Resps. to Interrogs.[100-26] at p. 2; AWD History [100-2].  Ms. Landrum's grandson, who is Mr. Landrum's former step-grandson, has been charged with murdering Mr. Landrum and is currently awaiting trial. Press Articles [102-15]; Dep. of Patricia Landrum [102-13] at p. 11.  Ms. Landrum was not aware that she remained the primary beneficiary of the Policy until she received a letter from Conseco on or around October 5, 2011, requesting that she complete an enclosed claim form and provide a certified copy of Mr. Landrum's death certificate.  Letter [100-4].  Ms. Landrum completed the claim form and submitted it to Conseco, along with the certified death certificate, on October 14, 2011.

Because Ms. Landrum identified herself as Mr. Landrum's ex-wife and

informed Conseco that Mr. Landrum died due to "gun shots to the head," Conseco "began an investigation for due proof as to the proper recipient of the funds." Def.'s Resps. to Interrogs. [102-6] at p. 13.  Ms. Landrum eventually filed suit against Conseco on January 9, 2012, to recover the proceeds, and Conseco filed an Answer and Complaint for Interpleader on January 19, 2012.  Conseco tendered $50,507.53 to Ms. Landrum on October 1, 2012.  Def.'s Resps. to Interrogs. [100-26] at p. 2; Def.'s Resp. [116] at p. 4.

Ms. Landrum maintains that Conseco has not tendered the full amount owed to her under the Policy and that it has withheld payment in bad faith. Conseco maintains that it has tendered to Ms. Landrum the full amount that she is owed, namely the Policy's "specified amount" of $50,000.00, plus interest at the rate of 0.75% for a total of $50,507.53.  Correspondence [100-20].  Ms. Landrum contends that she is owed the accumulation value of the Policy, which the parties agree is $6,786.88, multiplied times 122 for a total of $827,999.36, plus interest at a rate of four percent compounded annually.  Pl.'s Mot. [100] at pp. 4-5.  Ms. Landrum's Complaint advances claims for breach of contract, bad faith breach of contract, negligent misrepresentation, conversion, breach of the duty of good faith and fair dealing, breach of the duty to conduct a timely and through investigation, unjust enrichment, negligence and/or gross negligence, breach of fiduciary duty, and fraud.  Pl.'s Am. Compl. [8] at p. 8, ¶ 23.

## II.  <u>DISCUSSION</u>

A.   <u>Ms. Landrum's Motion [100] for Partial Summary Judgment and Conseco's Motion [102] for Summary Judgment</u>

1.   <u>Standard of Review</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Melton v. Teachers Ins. & Annuity Ass'n of Am.,* 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc).  The Court does not "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.*  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists

5

a genuine issue of material fact. *Hamilton,* 232 F.3d at 477. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co,* 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson,* 477 U.S. at 249). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "The court has no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.*

        2.    Mississippi Substantive Law Applies

Because jurisdiction of this case is based upon diversity of citizenship, Mississippi substantive law applies. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938). "The law pertaining to interpretation and enforcement of insurance policies is well-established." *S. Healthcare Servs., Inc. v. Lloyd's of London,* 110 So. 3d 735, 743 (Miss. 2013). "When the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *Id.* (internal citation omitted). "Mere disagreement as to the meaning of a policy provision does not render the policy ambiguous." *Id.* at 744. "A policy, or provision therein, is ambiguous if it can be logically interpreted in two or more

6

ways." *Id.* (internal citation omitted).  "The policy must be considered as a whole, considering all relevant portions together."  *Id.* (internal citation omitted).

      3.   <u>Contract-Based Claims</u>

      a.   <u>The Death Benefit Due Ms. Landrum Pursuant to the Policy</u>

The Policy permits the beneficiary to receive the greater of two amounts: the Policy's "specified amount" of $50,000 or the Policy's "accumulation value on the date of death times the Death Benefit Multiple shown on the Schedule."  Policy [102-2] at pp. 7-8.  Conseco submits that the amount owed to Ms. Landrum under the Policy is the greater "specified amount" of $50,000, since there is no dispute that the accumulation value is $6,786.88.  Def.'s Tender Letter [100-20].  Ms. Landrum contends that she is entitled to $827,999.36, which is the Policy's accumulation value at the time of Mr. Landrum's death, $6,786.88, multiplied by 122. Pl.'s Mot. [100] for Partial Summ. J. at pp. 4-5.

Conseco contends that Ms. Landrum's interpretation of the amount owed is grounded in an absurd reading of the Policy on the basis of a missing decimal point contained in a poor reproduction duplicate copy of a Policy issued in 1993, which Conseco retrieved from microfilm and produced during this litigation.  Def.'s Mem. [103] at p. 9.  The original Policy issued to Mr. Landrum is not available and is believed by Ms. Landrum to have been destroyed during Hurricane Katrina, along with Mr. Landrum's other household belongings.  Dep. of Patricia Landrum [102-13] at pp. 4-5.

Mr. Landrum was 64 years old at the time of his death.  Conseco asserts that it is obvious that the original Policy identified a multiplier of "1.22" for an attained age of 64, because the duplicate copy shows a space between the "1" and "22."  *Id.*  Def.'s Mem. [103] at pp. 2-3.  Conseco maintains, however, that the missing decimal point is irrelevant because Mr. Landrum's attained age at death was 63, as opposed to his calendar age of 64, and the Policy is clear that the multiplier for an attained age of 63 is "1.24."  *Id.*  Because $6,786.88 multiplied times either 1.22 or 1.24 is less than $50,000, Conseco submits that, regardless of Mr. Landrum's attained age, Ms. Landrum is owed the greater amount of the specified amount of the Policy, which is $50,000.  Def.'s Resp. [116] at p. 7.

The Policy's "Death Benefit Multiples" are contained in a Schedule, which appears in the duplicate copy of the Policy as follows:

| Attained Age/Factor | | Attained Age/Factor | | Attained Age/Factor | | Attained Age/Factor | |
|---|---|---|---|---|---|---|---|
| 0-40 | 2.50 | 54 | 1.57 | 68 | 1.17 | 82 | 1.05 |
| 41 | 2.43 | 55 | 1.50 | 69 | 1.16 | 83 | 1 05 |
| 42 | 2.36 | 56 | 1.46 | 70 | 1.15 | 84 | 1.05 |
| 43 | 2.29 | 57 | 1 42 | 71 | 1.13 | 85 | 1.05 |
| 44 | 2.22 | 58 | 1.38 | 72 | 1.11 | 86 | 1 05 |
| 45 | 2.15 | 59 | 1.34 | 73 | 1.09 | 87 | 1.05 |
| 46 | 2.09 | 60 | 1.30 | 74 | 1.07 | 88 | 1 05 |
| 47 | 2.03 | 61 | 1.28 | 75 | 1.05 | 89 | 1.05 |

8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 48 | 1.97 | 62 | 1.26 | 76 | 1.05 | 90 | 1.05 |
| 49 | 1.91 | **63** | **1.24** | 77 | 1.05 | 91 | 1.04 |
| 50 | 1.85 | **64** | **1 22** | 78 | 1 05 | 92 | 1 03 |
| 51 | 1.76 | 65 | 1.20 | 79 | 1 05 | 93 | 1 02 |
| 52 | 1.71 | 66 | 1 19 | 80 | 1.05 | 94 | 1.01 |
| 53 | 1.64 | 67 | 1 18 | 81 | 1 05 | | |

Schedule [100-1] (emphasis added).

Of the 55 multipliers listed in the Schedule, all contain a decimal point between the first and second number with the exception of eleven, and those eleven all contain a space between the first and second numbers, where decimal points existed in the original Policy. It is Ms. Landrum's position that the Schedule intentionally omits decimal points for these eleven multipliers and apparently that the blank spaces in these eleven multipliers were also intended and have no meaning. Pl.'s Mem. [101] at pp. 4-5. Ms. Landrum's theory would require the Court to interpret the Policy in such a way as to allow a person who dies at an attained age of 63 to receive 124% of the accumulation value of the Policy, while a person who dies at an attained age of 64 receives 12,200% of the accumulation value of the Policy. *Id.* at pp. 4-9. Ms. Landrum makes this argument despite having been provided a copy of the Specimen Policy during discovery. The Specimen Policy is the form from which Mr. Landrum's Policy was created and clearly shows a decimal between the first and second number of every multiplier. Specimen Policy [102-4].

Ms. Landrum's contention that she is entitled to $827,999.36 is a patently unreasonable reading of the Policy and would transform a life insurance policy into a lottery ticket. The accumulation value of the Policy, $6,786.88, whether multiplied by either 1.22 or 1.24, is less than the $50,000 "specified amount" of the Policy. Ms. Landrum is therefore entitled to a death benefit of $50,000, and Conseco has tendered this amount. The Policy is not ambiguous and cannot logically be interpreted in any other way. A plain and reasonable reading of the Policy and Schedule as a whole can only lead to the conclusion that Conseco has properly calculated the death benefit and that Conseco is entitled to summary judgment on this point.

<ul><li>b. <u>The Interest Due Ms. Landrum Pursuant to the Policy</u></li></ul>

The Policy provides that "[i]f no settlement option is in effect at the Insured's death, the beneficiary may choose a settlement option." Policy [100-1] at p. 16:

**23. Options**

The guaranteed interest rate for all options is 4%. We may allow excess interest at our discretion.

(a)      Option 1.      FIXED AMOUNT OR PERIOD – We will pay an income of a fixed amount or an income for a fixed period not exceeding 30 years. Refer to Option 1 Table to determine the number of fixed amount payments or the amount of each fixed period payment. On request, we will furnish income information not shown in the tables.

(b)   Option 2.   LIFE INCOME – We will pay an income during the payee's lifetime. A minimum guaranteed period may be used, as shown in the Option 2 Table. Payments will be in an amount we determine, but not less than shown in the table. On request, we will furnish minimum income information for ages not shown in the table.

(c)   Option 3.   CASH – We will hold the proceeds while the payee is alive and pay the interest to the payee. At the payee's death, the amount on deposit will be paid in a lump sum.

## 24.   SPECIAL BENEFIT ARRANGEMENT

A specially designated benefit option may be arranged with our approval.

## 25.   CONDITIONS AFFECTING OPTIONS

In order to elect an option, a supplementary contract setting forth the payee and terms of any settlement option elected must be issued in exchange for a release or our liability under this policy.

(a)   by the owner, during the lifetime of the Insured; or
(b)   by the beneficiary after the death of the Insured, if you had made no election.

## 26.   OPTIONS AT DEATH

At the death of the payee, unless otherwise directed in the election of the option; we will pay the commuted value, based on interest at the rate of 4% per year, or such higher rate as we may declare from time to time, of:

(a)   any remaining unpaid installments under Option 1; or

11

> > (b)     any remaining unpaid guaranteed installments
> >          under Option 2.

*Id.* at pp. 16-17.

No settlement option was selected prior to Mr. Landrum's death, and

Conseco's claim form directed Ms. Landrum to elect a settlement option.  Claim

Form [100-6] at p. 2.  The Claim Form provided:

> C.     Settlement Options
>
> The Conseco BenefitNOW Account® is our primary method
> of paying insurance proceeds over $5000.  BenefitNOW is
> an interest bearing draft account.  By simply writing a
> draft you have immediate access to your funds whenever
> you need them.  BenefitNOW may not be available in all
> states or some products.   If a BenefitNOW cannot be
> established, a single check will be issued to you.  Please see
> enclosed BenefitNOW insert.
>
> Election of settlement option if no election made by policy
> owner was in effect during insured's lifetime.
>
> Settlement Option/Manner of Payment _____
>
> Duration (if Applicable) _____
>
> Dollar Amount _____

*Id.*

Ms. Landrum wrote "BenefitNow" in the space provided for benefit election.

*Id.*  She testified at her deposition that she did so because she understood

"BenefitNOW" to mean that she would immediately receive the entire death

benefit.  Dep. of Patricia Landrum [100-11] at pp. 2-3.  Ms. Landrum stated that

there was no "enclosed BenefitNOW insert" and that she did not call Conseco

before electing "BenefitNOW."  *Id.*  She testified that she requested a copy of the Policy from Conseco the first time that she spoke over the phone with the primary claims adjuster but was advised that "they didn't do that."  Dep. of Patricia Landrum [100-11] at p. 7.  Conseco disputes that it refused Ms. Landrum a copy of the Policy but has submitted no proof on this point.  Def.'s Resp. [116] at p. 20.

Ms. Landrum now submits that the Policy "guarantee[s] a minimum interest rate on <u>all</u> settlement options of 4% – and grants the insurer the discretion to **increase** the amount of interest at its option.  The Policy does <u>not</u> allow the insurer to try to trick the insured into choosing a settlement option that provides **less** than 4% interest."  Pl.'s Mem. [101] at p. 10 (emphasis supplied).  Ms. Landrum asserts that Conseco "offered BenefitNow as the sole available Settlement Option while refusing to provide [her] a copy of the Policy and/or advise her of the Settlement Options [listed in the Policy]."  Pl.'s Resp. [109] at p. 16.

Conseco did not offer BenefitNOW as the "sole available Settlement Option."  The claim form references "Settlement Options" and "Duration," which is not applicable to the BenefitNOW settlement option.  Furthermore, Ms. Landrum's interpretation of the claim form and Policy ignores the fact that the Options listed in Paragraph 23 of the Policy are structured payment plans, none of which would permit immediate access to the full death benefit.  Policy [100-1] at pp. 16-17.  Immediate access to the full death benefit, however, is what Ms. Landrum testified that she wanted and what she continues to seek.  She requests that the Court

13

order Conseco to pay her "forthwith" $827,999.36 plus four percent interest compounded annually.  Pl.'s Mem. [101] at pp. 9-10.  This is not a settlement option enumerated in the Policy.

The Policy does, however, clearly allow Conseco to approve "[a] specially designated benefit option."  Policy [100-1] at p. 17.  Conseco elected to provide BenefitNOW, and allow a beneficiary "immediate access [to his or her] funds."  Claim Form [100-6] at p. 2.  The Policy guarantees a four percent interest rate for the structured settlement options enumerated in the Policy but does not mandate that a "specially designated benefit option" be paid at an interest rate of four percent.  The Policy does not speak to the interest rate of a "specially designated benefit option" but only provides that "[a] specially designated benefit option may be arranged with our approval."  Policy [100-1] at p. 17.  Ms. Landrum cannot have both her "benefit now" and a four percent interest rate.  Conseco has tendered the requisite interest owed to Ms. Landrum under the election she selected.  Ms. Landrum has cited no authority in support of her position that she should not be bound by her election because she did not have a copy of the Policy or an insert referenced on the claim form.  "Under Mississippi law, a contracting party is under a legal obligation to read a contract before signing it, and a person is charged with knowing the contents of any document that he executes." *S. Healthcare Servs., Inc.,* 110 So. 3d at 746 (internal citation omitted).  No material facts are in dispute on the question of interest, and Conseco is entitled to summary judgment on this

point.

        c.    <u>Conseco's Delay in Payment</u>

The Policy provides that Conseco "will pay the death benefit as soon as we get proof that the Insured has died while this policy is in force." Policy [102-2] at p. 7. "[S]ettlement will be made within two (2) months after receipt of due proof of death." *Id.* at p. 17. There is no dispute that Ms. Landrum has always been the named primary beneficiary of the Policy. It is also beyond dispute that Ms. Landrum submitted a completed claim form and Mr. Landrum's certified death certificate to Conseco on October 14, 2011, but Conseco did not tender the proceeds until nearly one year later, on October 1, 2012. Def.'s Resps. to Interrogs. [100-26] at p. 2; Def.'s Resp. [116] at p. 4.

Given the undisputed facts in this case, if Conseco did not have a reasonably arguable basis to delay the payment of the proceeds to Ms. Landrum, then Conseco has materially breached the terms of the Policy and is subject to liability for extra-contractual damages. *James v. State Farm Mut. Auto. Ins. Co.,* 719 F.3d 447, 451-53 (5th Cir. 2013). "[A]lthough Mississippi courts are skeptical of such claims, they have permitted claimants to recover damages on bad faith claims when resolution of an insurance claim is merely delayed rather than ultimately denied." *James,* 719 F.3d at 451 (collecting cases). "Inordinate delays in processing claims and a failure to make a meaningful investigation have combined to create a jury question on bad faith." *Essinger v. Liberty Mut. Fire Ins. Co.,* 529 F.3d 264, 271 n.1 (5th Cir.

2008)(citing *Lewis v. Equity Nat. Life Ins. Co.,* 637 So. 2d 183, 187-88 (Miss. 1994)).

To recover punitive damages for delay of payment on an insurance contract, a plaintiff must demonstrate that (1) the insurer lacked a reasonably arguable basis for delaying payment, either in fact or law, and (2) the insurer acted with malice or gross negligence in disregard of the insured's rights. *U.S. Fid. & Guar. Co. v. Wigginton,* 964 F.2d 487, 492 (5th Cir. 1992); *Caldwell v. Alfa Ins. Co.,* 686 So. 2d 1092, 1095-96 (Miss. 1996); *see* Miss. Code Ann. § 11-1-65(1)(a).  The first prong requires proof by a preponderance of the evidence, while the second prong requires proof by clear and convincing evidence. *James,* 719 F.3d at 453.  The question of whether the insurer had an arguable basis for denying a claim is an issue of law for the Court. *Wigginton,* 964 F.2d at 492.

"To establish a claim for punitive damages in the context of a bad faith claim, a party must first establish her entitlement to compensatory damages." *Id.* at 452.  The trial judge must first decide, as a matter of law, whether the insurer lacked a reasonably arguable basis for denying the claim. *Id.* "Then, the trier of fact determines whether compensatory damages are to be awarded and in what amount." *Id.* (citing Miss. Code Ann. § 11-1-65(1)(b)).  "If and only if the trier of fact does award compensatory damages, then 'the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact." *Id.* (citing Miss. Code Ann. § 11-1-65(1)(c)).

Insurers who are not liable for punitive damages may nonetheless be liable

for extra-contractual compensatory damages, or intermediate relief, where their decision to delay payment is without a reasonably arguable basis but is not sufficiently egregious to justify the imposition of punitive damages. *Essinger v. Liberty Mut. Fire Ins. Co.,* 534 F.3d 450, 451 (5th Cir. 2008); *Spansel v. State Farm Fire and Cas. Co.,* 683 F. Supp. 2d 444, 447 (S.D. Miss. 2010).   Extra-contractual compensatory damages include reasonable attorneys' fees, court costs, other economic damages, inconvenience, and emotional distress.   *James,* 719 F.3d at 452-53; *Universal Life Ins. Co. v. Veasley,* 610 So. 2d 290, 295 (Miss. 1992).   This intermediate relief "between simply receiving incidental costs of suit (but not attorneys' fees and other damages), and getting punitive damages" recognizes that an insurance company's financial default is often less than the cost to the insured of judicially forcing a correct payment.   *Essinger,* 529 F.3d at 270.   According to the Mississippi Supreme Court in *Veasley*:

> [a]pplying the familiar tort law principle that one is liable for the full measure of the reasonably foreseeable consequences of her actions, it is entirely foreseeable by an insurer that the failure to pay a valid claim through the negligence of its employees should cause some adverse result to the one entitled to payment.  Some anxiety and emotional distress would ordinarily follow, especially in the area of life insurance where the loss of a loved one is exacerbated by the attendant financial effects of that loss. Additional inconvenience and expense, attorneys fees and the like should be expected in an effort to have the oversight corrected.  It is not more than just that the injured party be compensated for these injuries.

610 So. 2d at 295.

17

(i)    <u>Whether Conseco Lacked a Reasonably Arguable Basis for Delaying Payment, Either in Fact or Law</u>

Under Mississippi law, insurers have a duty "to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation." *Liberty Mut. Ins. Co. v. McKneely,* 862 So. 2d 530, 535 (Miss. 2003). "An insurance carrier's duty to promptly pay a legitimate claim does not end because a lawsuit has been filed against it for nonpayment." *Gregory v. Continental Ins. Co.,* 575 So. 2d 534, 541 (Miss. 1990). "[C]onducting a prompt and adequate investigation provides a legitimate basis for payment delay." *James,* 719 F.3d at 454. The Policy provides:

> The beneficiary receives the death benefit of this policy upon death of the Insured. The beneficiary is so named in the application unless you request a change.
>
> You may change the beneficiary by notice to us at any time before the Insured dies. We must receive written notice of this change on our forms. When the change is received it will take effect on the date notice is received by us. We will not be liable for any payments we make or actions we take before the change is recorded.

Policy [100-1] at p. 15.

The Policy states that Conseco "will pay the death benefit as soon as we get proof that the Insured has died while this policy is in force." Policy [102-2] at p. 7. It provides that "settlement will be made within two (2) months after receipt of due proof of death." *Id.* at p. 17.

Conseco admits that Mr. Landrum designated Ms. Landrum as the primary

beneficiary when the Policy was issued in 1993 and that "it does not have any knowledge that the beneficiary of the subject insurance policy was ever changed in accordance with the provisions of the policy." Def.'s Resps. to Interrogs. [100-24] at p. 4; *see* Def.'s Resps. to Requests for Admission [100-23] at p. 3 (admitting that it did not receive written notice of a change of primary beneficiary). Ms. Landrum submitted a completed claim form and certified death certificate to Conseco on October 14, 2011. Def.'s Resps. to Interrogs. [100-26] at p. 2. Pursuant to the terms of the Policy, Conseco ordinarily should have settled the claim within two months after October 14, 2011.

Conseco has maintained throughout this litigation that the manner of Mr. Landrum's death factored into its decision to delay payment to Ms. Landrum. Def.'s Mem. [35] at p. 2; Def.'s Reply [37] at p. 3; Def.'s Mem. [103] at p. 14; Def.'s Resp. [116] at p. 21. However, by October 24, 2011, within ten days of receiving Ms. Landrum's claim form and Mr. Landrum's death certificate, Conseco knew that law enforcement had ruled Ms. Landrum out as a suspect in Mr. Landrum's death. Email [100-10]. Conseco had no reasonably arguable basis to delay payment on grounds that, under Mississippi law, a beneficiary cannot recover the proceeds of a life insurance policy where he or she wilfully takes the life of the insured. *Dill v. Southern Farm Bureau Life Ins. Co.,* 797 So. 2d 858, 864 (Miss. 2001).

Conseco also questioned Ms. Landrum's entitlement to the proceeds because

19

she was the ex-wife of Mr. Landrum.  By letter dated October 24, 2011, Conseco informed Ms. Landrum that her "claim will remain pending" due to a "requirement[]" that she submit "[a] copy of the divorce decree and property settlement agreement between John Landrum and Patricia Landrum." Correspondence [102-11].  The terms of the Policy do not require a beneficiary who is an ex-spouse to provide a divorce decree or property settlement agreement as a condition of receiving benefits.  Nevertheless, the Policy allowed Conseco two months from October 14, 2011, to investigate and settle the claim.

Ms. Landrum cooperated with Conseco and promptly provided it with a copy of the Divorce Decree on November 9, 2011.  Pl.'s Mot. [100] at p. 7; Def.'s Resp. [116] at pp. 17, 20; Divorce Decree [100-8].  Ms. Landrum did not submit a property settlement agreement to Conseco because the Landrums did not execute a property settlement agreement in connection with their divorce.  Pl.'s Mot. [100] at p. 7; Dep. of Patricia Landrum [100-11] at pp. 5-6.  Ms. Landrum testified that she notified Conseco by telephone on at least two different occasions that there was no property settlement agreement.  Dep. of Patricia Landrum [100-11] at pp. 5-6.  A notation in Conseco's claims file confirms one such conversation on November 28, 2011.  Dep. of Patricia Landrum [100-11] at pp. 5-6; AWD History Note [100-30].

Conseco did not tender the Policy's proceeds to Ms. Landrum after she informed its claims adjustor that there was no property settlement agreement. Instead, on November 28, 2011, a Conseco claims adjustor advised Ms. Landrum to

seek legal advice.  AWD History [100-30].  The following week, Ms. Landrum filed a complaint against Conseco with the Mississippi Insurance Department.  Miss. Ins. Dept. Compl. [100-12].

Conseco continued its investigation and explored whether Mr. Landrum had any heirs.  Conseco obtained an "Affidavit of Heirs" on December 5, 2011, that it relies on as a further basis for delaying payment to Ms. Landrum.  Affidavit of Heirs [102-12].  In the Affidavit, Mr. Landrum's brother attests that Mr. Landrum had four siblings.  *Id.*  The Affidavit does not reflect that Mr. Landrum's siblings were making a claim to the proceeds of the Policy, and Conseco now concedes that "the Insured's purported heirs at law did not make an express claim for the proceeds . . . ."  Def.'s Resp. [116] at p. 20.

On December 12, 2011, Conseco received correspondence from the Mississippi Insurance Department informing it of Ms. Landrum's complaint.  Letter [100-4].  Conseco responded to the Mississippi  Insurance Department by letter dated December 19, 2011.  *Id.*  The letter provided:

> Since Mr. Landrum's death was ruled a homicide and there were competing parties attempting to claim the death proceeds, it was determined that the issue should become an interpleader situation.  Therefore, an interpleader has been filed and no proceeds will be paid until determined by the court.

*Id.*

Conseco admits that no interpleader action had been filed at the time of Conseco's letter to the Mississippi Insurance Department.  Def.'s Mem. [103] at p.

21

18.  Conseco submits that its representation to the Mississippi Insurance Department was "inadvertent" and "simply a presumption based on the determination that an interpleader action was the proper means for the payment of the proceeds of the Policy."  Def.'s Resp. [116] at p. 4; Def.'s Reply [114] at p. 11. Conseco does not explain whether its representation to the Mississippi Insurance Department that "there were competing parties attempting to claim the death proceeds" was also inadvertent or a presumption, since it now admits that the purported heirs made no claim to the proceeds.  Def.'s Resp. [116] at p. 20.

Conseco turned Ms. Landrum's claim over to its legal department on December 19, 2011.  Def.'s Resp. [116] at p. 4.  The Mississippi Insurance Department wrote Ms. Landrum on December 20, 2011, informing her that Conseco represented that "no proceeds will be paid until determined by the court." Letter [109-4].  Ms. Landrum obtained counsel and filed suit against Conseco in this Court on January 9, 2012.  Pl.'s Compl. [1].

Conseco filed its Answer and a third-party Complaint for Interpleader on January 19, 2012.  Def.'s Answer and Countercl. [10].  Conseco represented in its Complaint for Interpleader that it "received an 'Affidavit of Heirs,' . . . from the purported heirs-at-law of decedent *making a claim for the proceeds of the subject policy*."  *Id*. at p. 11 (emphasis added).  Conseco sought to deposit the proceeds of the Policy into the Registry of the Court and to have the Court resolve whether Ms. Landrum or Mr. Landrum's siblings were proper beneficiaries.  *Id*. at p. 13.

Conseco also requested that it be dismissed from the case and discharged from all further liability associated with the proceeds. *Id.*

Summonses were served on Mr. Landrum's siblings between February 7, 2012, and February 9, 2012, and to date, none have filed an Answer or otherwise appeared. Summonses [12][13][14][15]. Conseco did not promptly pursue default judgments against the siblings, and Ms. Landrum attempted to do so, beginning on March 14, 2012. Pl.'s Mots. for Clerk's Entry of Default [18][19][20][21]; Pl.'s Mots. for Default Judgment [23][24][25][26]. On June 13, 2012, the Court denied Plaintiff's Motions for Default Judgment, finding that Conseco had not shown that interpleader was appropriate because it had not supplied sufficient proof that it was or may be exposed to double or multiple liability. Order [32] at p. 3.

On July 11, 2012, Conseco filed a Motion for Interpleader [34], again submitting that interpleader was appropriate because Mr. Landrum's siblings had made claims to the proceeds, and it was at risk of double or multiple liability. Def.'s Mem. [35] at p. 3. Conseco contended that the Landrums' Divorce Decree "alone offered Conseco Life no guidance as to the disposition of the subject policy as a result of the divorce." Def.'s Mem. [35] at pp. 2-3. The language of the Divorce Decree, however, confirmed Ms. Landrum's representation that no property settlement existed. Divorce Decree [100-8]. It informed Conseco that Ms. Landrum's whereabouts were unknown at the time of the divorce, that she was served via publication as a result, and that the divorce was granted on grounds

that she had willfully deserted the marriage for the space of one year.  Divorce

Decree [100-8]; *see* Miss. Code Ann. § 93-5-1(4).  As the Court has previously

observed in this case, "[g]iven that Plaintiff and Decedent's divorce was granted on

grounds of Plaintiff's desertion, it seems unsurprising that there would not have

been a property settlement agreement, since Plaintiff's whereabouts at the time of

the divorce were apparently unknown."  Order [38] at p. 5.  The docket sheet for

the Landrums' divorce was easily accessible to Conseco via the internet free of

charge and verifies that no property settlement agreement was filed in connection

with the Landrums' divorce.  Chancery Court docket [100-9].

On September 18, 2012, the Court denied Conseco's Motion for Interpleader,

finding again that it had "not demonstrated that it has a bona fide fear of

conflicting claims to the proceeds" and that its argument  "as to potential adverse

claims by Decedent's siblings is remote and speculative," as the siblings had not

made claims to the proceeds and there was no indication that they intended to do

so.  Order [38] at pp. 4-6.  On October 1, 2012, Conseco tendered $50,507.53 to Ms.

Landrum.  Def.'s Resp. [116] at p. 4.

Conseco submits that its nearly one-year delay in payment and its

Complaint for Interpleader were reasonable to protect Conseco from the possibility

of competing claims, noting that there is no requirement that an insurance

company be faced with actual competing claims.  Def.'s Resp. [116] at p. 116.  A

stakeholder, however, must legitimately fear double or multiple claims directed at

24

a single fund in order for interpleader to be appropriate.  *Wausau Ins. Cos. v. Gifford,* 954 F.2d 1098, 1101 (5th Cir. 1992).  The only case that Conseco cites in support of its position that it legitimately feared competing claims and that its delay in payment had a reasonably arguable basis is *Lafayette v. Guarantee Reserve Life Ins. Co.,* No. 4:04-cv-85-P-B, 2005 WL 2007148 (N.D. Miss. Aug. 18, 2005).  In *Lafayette*, two daughters of an insured contested the named beneficiary in the insured's life insurance policy, where the named beneficiary had listed herself as the decedent's granddaughter when she was not related to the insured in any way.  *Id.* at *6.  Based on those facts, the Court allowed interpleader, finding it "reasonable to believe that various legal theories could be asserted in support of the contest including fraud, undue influence, lack of mental capacity, etc."  *Id.*

Unlike *Lafayette,* there are no competing claims here, and unlike the life insurance company in *Lafayette,* Conseco has articulated no reasonable legal basis by which anyone other than Ms. Landrum might be entitled to the Policy's proceeds.  The record reflects that Conseco knew or should have known within two months of Ms. Landrum's claim that there was no property settlement agreement in connection with the Landrums' divorce, and even if one had existed, Conseco has offered no authority in support of its position that disposition of the Policy in a property settlement agreement could eclipse the unambiguous terms of the Policy, which required a change of beneficiary to be made by written notice on a form provided by Conseco.  Policy [100-1] at p. 15.  Conseco now admits, after three

representations to the contrary, that Mr. Landrum's siblings did not make a claim to the proceeds.  It was not reasonable for Conseco to delay payment to Ms. Landrum on the basis that she did not produce a property settlement agreement that does not exist.  Based on the undisputed material facts, the Court concludes as a matter of law that Conseco lacked an arguable basis for its delay in tendering payment to Ms. Landrum such that Conseco breached the terms of the Policy by not tendering payment within "(2) months after receipt of due proof of death." Policy [102-2] at p. 17.  Ms. Landrum will be allowed to present her case for extra-contractual compensatory damages at trial.  Because the Court is of the view that Ms. Landrum's claim for punitive damages is not ripe, Conseco's request to dismiss her punitive damages claim should be denied without prejudice at this time.

4.   <u>Fraudulent Misrepresentation</u>

Ms. Landrum asserts that Conseco is liable to her for fraudulent misrepresentation because Conseco "knew it was lying" when it represented to the Mississippi Insurance Department that an action for interpleader had been filed when, in fact, one had not, and when Conseco represented to the Mississippi Insurance Department that "there were competing parties attempting to claim the death proceeds," when in fact there were not.  Pl.'s Mem. [109] at pp. 27-28; Letter [100-14].  Conseco admits that it misrepresented to the Mississippi Department of Insurance that an interpleader had been filed on December 19, 2011, but maintains that "the claim had been turned over to Conseco Life's legal department

at that time in order to pursue an interpleader action[, and] . . . Conseco Life did file its complaint for interpleader soon thereafter in January 2012."  Def.'s Mem. [103] at p. 18.  Conseco contends that its misrepresentation was not a knowing one but "was simply a presumption based on the determination that an interpleader action was the proper means for the payment of the proceeds of this Policy."  Def.'s Reply [114] at pp. 2-3.  According to Conseco, there is "a complete lack of evidence that MS DOI would have continued its investigation had CLIC represented to it that it had determined an interpleader action was necessary and would be subsequently initiating an interpleader action."  *Id.* at p. 12.  Conseco also asserts that Ms. Landrum cannot show that she suffered any damage as a result of the misrepresentation because she would have hired an attorney anyway, whether Conseco filed a complaint for interpleader in December 2011 or January 2012.  Pl.'s Mem. [103] at pp. 19-20.

To prevail on a claim of fraudulent misrepresentation, a plaintiff must establish (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance upon its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.  *Martin v. Winfield,* 455 So. 2d 762, 765 (Miss. 1984).  "Proving fraud is difficult, as it ought to be.  Clear and convincing evidence is required."  *Id.*

27

Conseco was communicating with the Mississippi Insurance Department, and not Ms. Landrum, when it represented that an interpleader had been filed by December 19, 2011, and when it represented that there were competing claims to the proceeds.  Ms. Landrum has submitted no authority to support the conclusion that she may maintain a fraudulent misrepresentation claim when she was not the "hearer" of the misrepresentation.  Ms. Landrum has not met her summary judgment burden, and her fraudulent misrepresentation claim should be dismissed.

5.   Conversion, Negligent Misrepresentation, Unjust Enrichment, Breach of the Duty of Good Faith and Fair Dealing, and Breach of Fiduciary Duty

The Court has already determined that Conseco has tendered the correct amount of death benefits owed to Ms. Landrum.  As such, Ms. Landrum's conversion claim should be dismissed.  Ms. Landrum has not responded to Conseco's assertion that her claims for negligent misrepresentation, unjust enrichment, breach of the duty of good faith and fair dealing, and breach of fiduciary duty should be dismissed.  Ms. Landrum has therefore abandoned these claims, and they should be dismissed.

B.   Conseco's *Daubert* Motion [104] to Exclude Testimony of G. Richard Thompson

Conseco requests that the Court exclude Ms. Landrum's expert witness, G. Richard Thompson, whom Ms. Landrum has designated to opine that the death benefit equates to $827,999.40 and to calculate the interest on this amount at a

rate of four percent compounded annually.  Def.'s Mot. [104] to Exclude at pp. 2-3;

Pl.'s Desig. of Expert Witness [104-1].  In light of the Court's ruling that Ms.

Landrum is not entitled to a death benefit of $827,999.40 or interest at the rate of

four percent compounded annually, Mr. Thompson's testimony is irrelevant.

Conseco's *Daubert* Motion [104] to Exclude Testimony of G. Richard Thompson

should be granted.

C.   <u>Ms. Landrum's Motion [107] for Sanctions and to Strike/Objections to
     Affidavit, Expert Opinions, Other Exhibits, and Arguments Submitted in
     Support of Conseco's Motion for Summary Judgment</u>

Ms. Landrum moves to strike certain evidence and requests sanctions

against Conseco for relying on evidence and expert opinions allegedly not disclosed

during discovery.  Pl.'s Mot. [107] for Sanctions at pp. 1-2.  Conseco submitted the

Affidavit of David Rikkers in support of its Motion for Summary Judgment and

with its Response to Ms. Landrum's Motion for Partial Summary Judgment.  Aff.

of David Rikkers [102-1].  Mr. Rikkers is a Legal Interface Compliance Analyst at

CNO Services, LLC, which provides administrative services for Conseco.  *Id.* at p.

1.

Mr. Rikkers avers in his Affidavit that "Death Benefit Multiples," such as

those in the Policy's Schedule, are governed by Internal Revenue Code Section

7702, 26 U.S.C. § 7702.  *Id.* at p. 2.  He attests that the Policy would not comply

with Section 7702 and meet the definition of life insurance if the Schedule

contained a multiplier of 122, as opposed to a multiplier of 1.22.  *Id.* at pp. 2-3.  Mr.

Rikkers also avers that the death benefit is determined by an insured's "attained age" at death, as opposed to his calendar age. *Id.* at p. 3. Mr. Rikkers submits that Mr. Landrum died at an "attained age" of 63 and a death benefit of 1.24 is therefore applicable because "'[a]ttained age' means the insured's age determined by reference to contract anniversaries, rather than individual's actual birthday." *Id.* at p. 3.

The Court agrees with Plaintiff that portions of Mr. Rikkers' Affidavit stray into the realm of expert testimony, and because Mr. Rikkers was not designated as an expert, the Court has not considered these portions of the Affidavit. To this extent, Ms. Landrum's Motion [107] is moot. While the Court did not consider Section 7702 of the Internal Revenue Code, it knows of no authority and has been provided none which would prohibit the Court from taking judicial notice of or considering a federal statute in reaching its decisions.

The Court has relied on Ms. Rikkers' representation that the Specimen Copy of the Policy provided to Ms. Landrum during discovery is "Policy Form 2F0110-10/89," the form from which Mr. Landrum's Policy was derived. *Id.* at p. 2. Mr. Rikkers was disclosed by Conseco during discovery as a person with discoverable knowledge, another Affidavit of Mr. Rikkers was submitted in support of Conseco's Motion for Interpleader, and Mr. Rikkers verified each of Conseco's responses to Ms. Landrum's interrogatories. Def.'s Resp. [117] at pp. 4-5. Furthermore, a copy of the Specimen Policy was produced prior to the close of discovery and was

attached as an exhibit to Ms. Landrum's deposition.  *Id.* at p. 5.  In light of the foregoing, Ms. Landrum's Motion for Sanctions and to Strike/Objection to Affidavit, Expert Opinions, Other Exhibits, and Arguments Submitted in Support of Conseco's Motion for Summary Judgment should be denied.

D.    <u>Ms. Landrum's Motion [119] for Leave to File Additional Pages of Memorandum Briefs in Support of Plaintiff's Motion for Partial Summary Judgment</u>

On the same date that she filed her Rebuttal [120] in Support of her Motion for Partial Summary Judgment, Ms. Landrum filed a Motion [119] requesting leave to exceed the thirty-five page limit for original and rebuttal memorandum briefs.  The Local Uniform Civil Rules provide:

> **Length of Memorandum Briefs**.  Movant's original and rebuttal memorandum briefs together may not exceed a total of thirty-five pages, and respondent's memorandum brief may not exceed thirty-five pages.

L. U. Civ. R. 7(b)(5).

Conseco submits that Ms. Landrum is attempting to circumvent the Local Rules' 35-page limit by submitting a thirteen page Motion for Partial Summary Judgment which contains an itemization of purported undisputed facts, then incorporating those facts into her accompanying 23-page Memorandum in Support, and then filing a 17-page rebuttal.  Def.'s Resp. [116] at p. 5 n.2.  Ms. Landrum maintains that "Uniform Rule 7(b)(5) clearly does not include pages in 'motions' in the limitations set forth therein" and that Federal Rule of Civil Procedure 56 "specifically requires" that the "motion" in support of Summary Judgment include

undisputed facts and citations to record in support of those facts.  Pl.'s Mot. [119] at p. 2.

The portion of Rule 56 that Ms. Landrum relies on in support of her argument addresses the procedure for seeking summary judgment.  Fed. R. Civ. P. 56(c)(1).  It provides that a party seeking summary judgment must demonstrate, by citation to materials in the record, that there is no genuine issue of material fact.  *Id.*  Rule 56(c)(1) does not provide that a "motion" for summary judgment, as opposed to the memorandum in support, must contain all purportedly undisputed facts.  The Court is not persuaded that Local Rule 7's reference to memorandums alone means that a party may circumvent the Rule's 35-page limit by filing as lengthy a "motion" as that party desires.

Ms. Landrum's counsel has previously been admonished twice during this litigation regarding the needlessly lengthy and voluminous nature of his filings.  Order [85] at pp. -4; Order [118] at p. 8.  Prolix and redundant filings are neither necessary nor effective and can be easily remedied through proper editing.  Furthermore, a request for leave of Court to exceed the Local Rules' page limitation should be filed and granted by the Court before a party submits a document that exceeds the page limitation.  Under the circumstances here, Ms. Landrum's Motion [119] requesting leave to exceed the Local Rules' 35-page limitation should be denied.

III.  **CONCLUSION**

For the foregoing reasons, Ms. Landrum's Motion [100] for Partial Summary Judgment and Conseco's Motion [102] for Summary Judgment should each be granted in part and denied in part, Conseco's *Daubert* Motion [104] should be granted, Ms. Landrum's Motion [107] for Sanctions and to Strike should be denied, and Ms. Landrum's Motion [119] for Leave to File Additional Pages should be denied.  To the extent that the Court has not addressed any of the parties' arguments, it has nevertheless considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff Patricia K. Landrum's Motion [100] for Partial Summary Judgment and Defendant Conseco Life Insurance Company's Motion [102] for Summary Judgment are each **GRANTED IN PART AND DENIED IN PART**.  Conseco did not breach the terms of the Policy in calculating the death benefit and interest owed.  Conseco is entitled to summary judgment in part on these issues.  However, Ms. Landrum is entitled to summary judgment in part in that Conseco did breach the terms of the Policy by delaying payment.  Because Conseco lacked a reasonably arguable basis for this delay, Ms. Landrum's claim for extra-contractual compensatory damages will proceed to trial.  Ms. Landrum's claims for fraudulent misrepresentation, negligent misrepresentation, conversion, unjust enrichment, breach of the duty of good faith and fair dealing, and breach of fiduciary duty are dismissed with

prejudice.  Ms. Landrum's claim for punitive damages is not ripe, and Conseco's request to dismiss Ms. Landrum's punitive damages claim is denied without prejudice at this time.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Conseco Life Insurance Company's *Daubert* Motion [104] to Exclude Testimony of G. Richard Thompson is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Patricia K. Landrum's Motion [107] for Sanctions and to Strike/Objection to Affidavit, Expert Opinions, Other Exhibits, and Arguments Submitted in Support of Conseco's Motion for Summary Judgment is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Patricia K. Landrum's Motion [119] for Leave to File Additional Pages of Memorandum Briefs in Support of Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 13th day of November, 2013.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE